CIVIL ACTION NO.: 4:10 CV 00002

DANNY W. L. HUDSON, JR.

    Plaintiff,

     v.

PHYLLIS P. LEE, *et a.*,

    Defendants.

)
)
)
)
)
)
)
)
)
)

**DEFENDANTS' MEMORANDUM
OF LAW IN SUPPORT OF
MOTION TO DISMISS**

## INTRODUCTION

COME NOW Defendants Phyllis P. Lee, individually and as City Manager of the City of Roanoke Rapids; Gary Corbet, individually and as Fire Chief of the City of Roanoke Rapids; and the City of Roanoke Rapids (collectively "Defendants"), by and through their undersigned counsel, and pursuant to Local Rules 7.1 and 7.2, and respectfully submit this Memorandum of Law in Support of Defendants' Motion to Dismiss. For the following reasons, among others, this Motion should be GRANTED, and Plaintiff's claims should be DISMISSED WITH PREJUDICE.

## STATEMENT OF THE CASE

This action arises out of complaints made by a disgruntled employee of the City of Roanoke's Fire Department. On December 7, 2009, Plaintiff filed a Complaint against Defendants in the Superior Court Division in Halifax County, North Carolina. In the Complaint, Plaintiff alleges (1) violations of federal constitutional rights, (2) violations of North Carolina constitutional rights, and (3) wrongful discharge. On January 6, 2010, Defendants timely filed a Notice of Removal to transfer the case to the United States District Court for the Eastern District of North Carolina.

## STATEMENT OF FACTS

Plaintiff has been continuously employed as a member of the City's Fire Department since November 1989. (DE # 1-1, Complt. ¶ 23) From 1997 until May 2009, Plaintiff served as a Lieutenant

or a Senior Lieutenant in the City's Fire Department. ([DE # 1-1](), Complt. ¶ 24) Plaintiff currently works as a Fire Engineer for the City. ([DE # 1-1](), Complt. ¶¶ 72, 73)

Plaintiff alleges that on January 4, 2009, City Council member Jon Baker ("Baker") asked to meet with him. ([DE # 1-1](), Complt. ¶ 26) At a meeting this same day, "Baker asked Hudson if he was aware of or concerned about any issues or problems with the Fire Department." ([DE # 1-1](), Complt. ¶ 26) At this time, Hudson identified and described "numerous issues and problems." ([DE # 1-1](), Complt. ¶¶ 26 – 28; 46) Specifically, Plaintiff contends he advised Baker that:

1. Corbet had wrecked a car issued to him by the City on two occasions and failed to report one of the accidents. ([DE # 1-1](), Complt. ¶ 28) P

2. The Fire Department's pay practices relating to overtime and compensatory time constituted violations of the Fair Labor Standards Act ("FLSA"), as well as the City's Personnel Policy. ([DE # 1-1](), Complt. ¶ 30)

3. Corbet eliminated the Fire Department's policy of allowing its members a one-hour break on Christmas Day so they could leave the Fire Department premises to eat Christmas dinner with their families. ([DE # 1-1](), Complt. ¶ 41)

4. Despite his repeated requests, Corbet refused to make the changes which Plaintiff thought were necessary and refused to bring the Fire Department's practices into compliance with the FLSA and the City's Personnel Policy. ([DE # 1-1](), Complt. ¶ 30)

After having met with Councilman Baker (at Baker's request), Hudson participated in a second meeting held on January 6, 2009. ([DE # 1-1](), Complt. ¶ 43) At the meeting Plaintiff and other members of the Fire Department met with Baker and Councilman Edward Liverman ("Liverman") to complain about Corbet and his job performance as the City's Fire Chief. (*Id.*) On January 9, 2009, Plaintiff contends he complained to Mayor D.N. Beale ("Beale") about "the same problems which he complained to City Council members earlier [Liverman and Baker] in January 2009." ([DE # 1-1](), Complt. ¶ 46)

As a result of these complaints to Liverman, Baker, and Beale, the City Council directed Lee "to conduct an investigation of the problems and issues raised by Hudson and other members of the Fire Department." ([DE # 1-1](), Complt. ¶ 47) Following the investigation, the City Council adopted several "corrective measures" including: (1) reinstatement of the one-hour Christmas Day break for Fire Department employees; (2) reinstatement of the practice of allowing eleven (11) holidays for Fire

Department employees over a two-year period; and (3) measures "to allow for the appropriate and timely use of 'comp' time." (*Id.*)

On or about May 1, 2009, almost four (4) months after Plaintiff was approached by Baker and questioned about concerns in the Fire Department, Plaintiff walked into the City's Fire Department Station Number Two carrying a .38 (thirty-eight) caliber handgun. (DE # 1-1, Complt. ¶ 52) Plaintiff's Complaint does not indicate whether his handgun was loaded at the time he carried it into the station. (*See generally* Complt.) City Ordinance §131.04 titled "Weapons Prohibited on City Property" prohibits the possession of a concealed weapon in a City-owned building, among other places. (*See* Exhibit A) City Ordinance § 131.99 titled "Penalty" provides that the possession of a concealed weapon in a City-owned building is a misdemeanor, punishable upon conviction with a $500 fine, imprisonment for six (6) months, or both. (*Id.*)

Once inside the station, Plaintiff placed his handgun in a City provided locker. (DE # 1-1, Complt. ¶ 52) On May 2, 2009, Kenneth Hollowell ("Hollowell"), an employee of the City's Fire Department opened the locker and discovered the handgun. (*Id.*) Hollowell reported the presence of the handgun to Corbet. (DE # 1-1, Complt. ¶ 58) Later this same day, A.C. Bondarek, the City's Deputy Chief of Police, notified Plaintiff that his handgun had been discovered in a locker at Station Number Two. (DE # 1-1, Complt. ¶ 59)

On May 6, 2009, Corbet, Deputy Fire Chief Stacy Coggins ("Coggins"), and the City's Director of Human Resources Kathy Kearney ("Kearney") conducted a Pre-Disciplinary Conference with Plaintiff. (DE # 1-1, Complt. 61) During this Conference, Plaintiff gave a statement and answered questions regarding why he had carried his handgun onto City property and stored it in the locker. (DE # 1-1, Complt. ¶ 62)

After the Pre-Disciplinary Conference, Plaintiff received written notification that his employment with the City was being terminated because he brought and stored a his handgun at Fire Station Number Two in violation of Article IX of the City's Personnel Policy. (DE # 1-1, Complt. ¶ 63) Specifically, Plaintiff was notified that he was being terminated for (1) "willful and wanton acts that endanger[ed] the

lives and property of others;" (2) "possession of unauthorized firearms or other lethal weapons on the job" and (3) "conduct unbecoming a public official or employee." ([DE # 1-1](#), Complt. ¶ 64)

Plaintiff's Complaint contends Corbet "made" the decision to terminate Plaintiff's employment. ([DE # 1-1](#), Complt. ¶ 66) However, Plaintiff simultaneously admits in the Complaint that Lee "possessed the authority to hire and fire employees…of Roanoke Rapids" and that Lee "acted as the highest-making official of Roanoke Rapids in matters involving the hiring and firing of employees of Roanoke Rapids, including Hudson." ([DE # 1-1](#), Complt. ¶¶ 14; 18) Plaintiff also admits that Lee "recommended and approved" Corbet's decision to terminate his employment. ([DE # 1-1](#), Complt. ¶ 66) Plaintiff further contends that Kearney "approved" the decision to terminate Plaintiff's employment. (*Id*.)

On May 18, 2009, Plaintiff appealed his termination. ([DE # 1-1](#), Complt. ¶ 69) On July 6, 2009, Plaintiff's appeal was heard by Interim City Manager Peter T. Connet ("Connet"). ([DE # 1-1](#), Complt. ¶ 72) The next day, Connet "rescinded and converted" Plaintiff's termination "to a suspension without pay," demoted Plaintiff to Fire Engineer, and reduced his salary 10 (ten) percent. (*Id*.) Connet also placed Plaintiff on probation and declared him ineligible "for promotion to a higher rank for a period of two years, unless otherwise approved by the City Manager." (*Id*.) On July 19, 2009, Plaintiff continued his employment with the City as a Fire Engineer. ([DE # 1-1](#), Complt. ¶¶ 72 - 73)

Plaintiff's Complaint contends his termination and demotion were *not* because he carried a .38 (thirty-eight) caliber handgun into the Station Number 2 and stored it in a locker overnight. Instead, Plaintiff contends his termination and demotion were "for making statements on matters of public concern and in order to silence and discredit him from speaking further on matters of public concern." ([DE # 1-1](#), Complt. ¶ 85) To this end, Plaintiff alleges that after he participated in the January 6, 2009, meeting, Corbet purportedly told the Town of Weldon Fire Chief Martin Bolt that he was going to "get" the Fire Department employees due to their attendance at the meeting. ([DE # 1-1](#), Complt. ¶ 51) Plaintiff's Complaint does not indicate when or where this conversation between Corbet and Bolt allegedly occurred. Finally, Plaintiff's Complaint does not indicate whether Plaintiff was criminally prosecuted for violating the City's Ordinance prohibiting handguns on City property. (*See generally* Complt.)

<u>**ARGUMENT**</u>

**I.      <u>Standard of Review.</u>**

The purpose of a Rule 12(b)(6) motion is to test the legal sufficiency of the pleadings.  *De Sole v. United States*, 947 F.2d 1169, 1178 (4th Cir. 1991).  Plaintiff has the burden to allege in his complaint "facts sufficient to state all the elements of [his] claim."  *Bass v. E.I. Dupont de Nemours & Co.*, 324 F.3d 761, 765 (4ᵗʰ Cir. 2003).  In order to withstand a motion to dismiss, a Complaint must plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570,127 S.Ct. 1955, 1974 (2007).  In *Twombly*, the U.S. Supreme Court reversed the lower court's ruling denying a motion to dismiss stating the action should have been dismissed because the plaintiff failed to provide facts necessary to "nudge[] their claims across the line from conceivable to plausible."  *Id*.

Thus, a plaintiff's claims must not be merely conceivable, but also must be plausible.  *Id*.  In addition, factual allegations in a plaintiff's complaint "must be enough to raise a right to relief above the speculative level."  *Id*. at 555, 127 S.Ct. at 1965.  While a court "must take the facts in the light most favorable to the plaintiff [under a Rule 12(b)(6) motion], we need not accept legal conclusions drawn from the facts."  *Eastern Shore Markets, Inc. v. J.D. Associates Ltd. Partnership*, 213 F.3d 175, 180 (4th Cir. 2000).  "Similarly, [the Court] need not accept as true unwarranted inferences, unreasonable conclusions, or arguments."  *Id*.

**II.     <u>Plaintiff cannot maintain a cause of action based on a violation of 42 U.S.C. § 1983.</u>**

To prevail on his § 1983 claim, plaintiff must establish:  (1) that he has been deprived of a right, privilege, or immunity secured by the Constitution or laws of the United States; and (2) that the conduct complained of was committed by a person acting under color of state law.  *See* 42 U.S.C. § 1983.  Here, Plaintiff alleges Defendants should be liable under § 1983 because they violated his right to free speech, due process of law, and equal protection.  For the reasons that follow, all of Plaintiff's § 1983 claims must be dismissed.

**A.      <u>Plaintiff's § 1983 claim against the City fails because municipal liability cannot be based solely on a *respondeat superior* theory.</u>**

Municipal liability may be imposed under § 1983 only where the constitutional deprivation is the result of the municipality's official policy or custom; a municipality may not be held vicariously liable for the constitutional torts of its officers solely based on *respondeat superior*. *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 735-36, 109 S.Ct. 2702, 2723 (1989) (concluding that since § 1983 was the "exclusive federal damages remedy" in actions against "state actors" for vindication of rights guaranteed by § 1981, liability standards were necessarily the same). As the Supreme Court explained in *Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 98 S.Ct. 2018 (1978), the language of § 1983 "compels the conclusion that Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort." *Id.* at 691, 98 S.Ct. at 2036. "[A] municipality cannot be held liable solely because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory." *Id.*

In this case, Plaintiff has not identified through proper factual allegations any potential bases (other than a respondeat superior theory) for imposing liability against the City. Although the Complaint makes general, conclusory reference to certain City "policies," Plaintiff has failed to cite any specific provision of City policy which could provide a basis for such a claim. *See Twombly*, 550 U.S. at 554-55, 1275 S.Ct. at 1965.

Plaintiff purports to claim in Paragraph 81 of his Complaint that Lee was the "Chief Policy Making Officer" for the City and that Defendants' actions constituted "official acts" of the City. However under North Carolina law, final policy making authority for the City rests exclusively with the City Council–*not* the City Manager. *See, e.g.*, N.C. Gen. Stat. § 160A-148 (manager is chief administrator, but must act "in accordance with such general personnel rules, regulations, policies, or ordinances as the council may adopt."); N.C. Gen. Stat. § 160A-164 (authorizing city council to adopt personnel rules and regulations). Plaintiff has *not* alleged any action of the City Council or any specific official City policy to support an independent theory of liability against it. Accordingly, his § 1983 claims against the City must be dismissed.

**B.** **Plaintiff's § 1983 claims fail because Plaintiff has not alleged that any official City policy or custom caused a deprivation of Constitutional rights.**

For the same reasons, Plaintiff's claim fails under the related requirement of § 1983 that municipal liability may only be imposed where the constitutional deprivation is the direct result of the municipality's official policy or custom. *Greensboro Prof. Fire Fighters Ass'n v. City of Greensboro*, 64 F.3d 962, 964 (4th Cir. 1995) (citing *Monell*, 436 U.S. at 690, 98 S.Ct. at 2035-36); *Crowley v. Prince George's County*, 890 F.2d 683, 684-87 (4th Cir. 1989). The plaintiff must demonstrate the alleged constitutional deprivation was caused by *an official policy or custom of the municipality itself. Crowley*, 890 F.2d at 685-87. In this context, municipal "policy" refers to "formal rules or understandings . . . that are intended to, and do, establish fixed plans of action to be followed under similar circumstances consistently and over time." *Pembaur v. Cincinnati*, 475 U.S. 469, 480-81, 106 S.Ct. 1292, 1299 (1986). In other words, "policy" denotes a course of action that is the standard or routine plan, as distinguished from "episodic exercises of discretion in the operational details of government." *Semple v. City of Moundsville*, 195 F.3d 708, 712 (4th Cir. 1999). The challenged policy must be so "persistent and widespread and permanent and well settled as to constitute a custom or usage with the force of law." *Carter v. Morris*, 164 F.3d 215, 218 (4th Cir. 1999) (internal quotations omitted). Only where the municipality has made "a deliberate choice" to establish the questioned policy as *the standard course of action* to be followed in similar circumstances will municipal liability under § 1983 lie. *See id.*

Moreover, the challenged municipal "policy or custom" must be an existing policy or custom of depriving persons of *the particular right in question. Carter*, 164 F.3d at 218. "Thus, a plaintiff cannot rely upon scattershot accusations of unrelated constitutional violations to prove that . . . [the municipal policy itself] was the moving force behind [his] deprivation." *See id.; accord Greensboro Fire Fighters*, 64 F.3d at 964. Again, under North Carolina law, a City's final policy-making authority is vested in the exclusively in the city council. *See, e.g.*, N.C. Gen. Stat. § 160A-148; N.C. Gen. Stat. § 160A-164.

Here, Plaintiff has failed to point to or allege a *single specific* official policy or custom of the City which has caused an alleged deprivation of his rights. Plaintiff's conclusory references to City "policy"

or "custom" are wholly insufficient to satisfy this requirement. *See Twombly*, 550 U.S. at 554-55, 1275 S.Ct. at 1965. Again, Plaintiff merely seeks to base his claim against the City upon the actions of its employees, but as addressed above, such a claim is not viable. As also discussed, Plaintiff's attempt to characterize Lee as a "Chief Policy Making Officer" for the City cannot save his claim; as noted, under North Carolina law, a city manager does not retain policy making authority for the City, and such authority rests exclusively with the City Council. In short, Plaintiff has not cited any policy or custom promulgated by the City council which could serve as a basis for a § 1983 claim.

In fact to the contrary, even the most liberal reading of the Plaintiff's Complaint leads to the inevitable conclusion that the Plaintiff *violated* the City's policies during the course of his employment, including the City's Ordinances and Personnel Policy. More specifically, Plaintiff violated the City's Ordinances which prohibited the possession of a concealed weapon in a City-owned building. (DE # 1-1, Complt. ¶¶ 52, 72; Ordinances Sections §§ 131.04 and 131.99 attached hereto as Exhibit A) The other City policies violated by Plaintiff include the City's Personnel Policies related to "Unsatisfactory Job Performance" and "Detrimental Personal Conduct." (DE # 1-1, Complt. ¶ 63) In sum, Plaintiff *blatantly* violated the City's policies by illegally carrying a .38 (thirty-eight) caliber handgun into Fire Station Number Two and leaving it in a City provided locker. (DE # 1-1, Complt. ¶¶ 52, 59) Ironically, Plaintiff even *admits* the reason given for his termination and demotion was because of *his* violation of these policies. (DE # 1-1, Complt. ¶¶ 63, 64, 72)

C.     **Plaintiff's federal claims based upon alleged violations of his First Amendment right to free speech must be dismissed.**

"To establish a free-speech claim under the First Amendment, plaintiff must establish (1) that the speech or activity complained of was protected speech or activity, and (2) that this protected speech or activity was the 'motivating' or 'but for' cause of the adverse employment action taken against the plaintiff." *Munn-Goins v. Board of Trustees of Bladen Community College*, 658 F.Supp.2d 713, 725 (E.D.N.C. 2009). "A three-step analysis is employed to determine whether a retaliatory action violates a public employee's right to free speech. First, the speech must relate to a matter of public concern.

Second, the 'employee's interest in First Amendment expression must outweigh the employer's interest in efficient operation of the workplace.' Finally, there must be a causal connection between the protected speech and the retaliation; specifically, the protected speech must be a 'substantial factor' in the decision to take the retaliatory action." *Sheaffer v. County of Chatham*, 337 F.Supp.2d 709, 718 (M.D.N.C. 2004). Each of these requirements will be addressed in turn.

1.        <u>Plaintiff did not engage in speech on a matter of public concern.</u>

"Whether speech or activity involves a matter of public concern is a question of law." *Munn-Goins*, 658 F.Supp.2d at 726. "Speech involves a matter of public concern when it involves an issue of social, political, or other interest to a community." *Kirby v. City of Elizabeth City,* 388 F.3d 440, 446 (4th Cir. 2004). "'Personal grievances, complaints about conditions of employment, or expressions about other matters of personal interest do not constitute speech about matters of public concern that are protected by the First Amendment, but are matters more immediately concerned with the self-interest of the speaker as employee.'" *Munn-Goins*, 658 F.Supp.2d at 726. This is so even though a governmental office may be involved:

> To presume that all matters which transpire within a government office are public concern would mean that virtually every remark-and certainly every criticism directed at a public official-would plant the seed of a constitutional case.... [T]he First Amendment does not require a public office to be run as a roundtable for employee complaints over internal office affairs.

*Connick v. Myers*, 461 U.S. 138, 149, 103 S.Ct. 1684, 1691 (1983).

In determining whether an employee's speech or activity addresses a matter of public concern, the court must consider "the content, form, and context of a given statement, as revealed by the whole record." *Id.* at 147-48, 103 S.Ct. at 1690; *see also Evans*, 132 N.C. App. at 9, 510 S.E.2d at 175-76. The inquiry rests on "'whether the public or the community is likely to be truly concerned with or interested in the particular expression, or whether it is more properly viewed as essentially a private matter between employer and employee.'" *Edwards v. City of Goldsboro*, 178 F.3d 231, 247 (4th Cir. 1999). Similarly critical is ascertaining whether the speech was made primarily in the plaintiff's role as employee or primarily in his role as citizen. *Urofsky v. Gilmore*, 216 F.3d 401, 407 (4th Cir. 2000). Significantly,

while an employee's speech is rarely entirely private or entirely public, the speech should not be divided, but considered in its entirety as a single expression with the court examining the "main thrust" of the speech. *Stroman v. Colleton County School Dist.*, 981 F.2d 152, 157 (4th Cir. 1992). "If the court determines that the activity or speech does not involve a matter of public concern, the First Amendment analysis ends and plaintiff loses." *Munn-Goins*, 658 F.Supp.2d at 726.

In the present case, the allegations of Plaintiff's Complaint do not, as a matter of law, satisfy the "pubic concern" requirement of these claims. The speech alleged in the Complaint consists of complaints Plaintiff made in January 2009 upon being questioned by Baker as to whether he was aware of or concerned about any issues in the Fire Department. (DE # 1-1, Complt. ¶ 26) Further his complaints consisted primarily of Plaintiff's complaints that he and other employees were not receiving the amount of vacation time or compensation that Plaintiff believed was warranted, as well as a complaint about Corbet's management of an automobile incident. Plaintiff complained that he and other employees were no longer afforded the same vacation days they had once enjoyed, and that the Department had eliminated such benefits as allowing employees "a one-hour break on Christmas Day to allow Fire Department employees to leave the Fire Department premises to go home and eat Christmas Dinner with their families." (DE # 1-1, Complt. ¶ 41) Notwithstanding Plaintiff's comments regarding Corbet's handling of the alleged automobile incident, the "main thrust" of Plaintiff's concerns as alleged in the Complaint pertain directly to "*the conditions of employment*" and were primarily personal grievances of Plaintiff as to employee vacation time and pay, overwhelmingly private concerns.

Moreover, Plaintiff voiced his complaints as an employee of the Fire Department upon the specific request of Baker as to whether he had any concerns. (DE # 1-1, Complt. ¶¶ 25-26) Plaintiff did not voice his concerns *unprompted* or *publically* as a concerned public citizen attempting to bring light to wrongdoing within the Department. Rather his concerns were made solely in his capacity as an *employee of the Department responding to a specific* request from Baker to relay any concerns regarding the working conditions at the Fire Department; there was nothing "public" at all about the form of Plaintiff's complaints. Moreover, the fact that the Department happens to constitute a governmental office, as noted

10

in *Connick*, does not convert Plaintiff's complaints regarding "the conditions of employment" into matters of public concern. *See, e.g., DeWitt v. Mecklenburg County*, 73 F.Supp.2d 589, 607 (W.D.N.C. 1999) (plaintiff's complaints to EEOC and county officials regarding mistreatment by the defendant and his administration were not of public concern notwithstanding reference to "classwide sex discrimination" and "generally unhappy working conditions within the Department" complaints focused on plaintiff's frustrations "and thus in 'content, form, and context' her 'speech' essentially addressed a private grievance rather than a public concern"); *Kephart v. Cherokee County*, 52 F.Supp.2d 598, 605 (W.D.N.C. 1999) ("Plaintiff's comments addressed matters of private, employment issues, not community concerns. And, at the time of his comments, Plaintiff clearly was speaking as an employee, not as a citizen. Communications made in the course of carrying out employment duties and between employees speaking as employees are not of public concern. The record does not show that at any time, before or since, has Plaintiff in his capacity as a citizen attempted to bring to light wrongdoing.").

Plaintiff repeatedly characterizes his complaints against the Department as concerning FLSA violations. However, numerous courts have confirmed that allegations of FLSA violations, including the very types of pay and benefit complaints Plaintiff alleges here, simply do not constitute matters of public concern. *See, e.g.*, *Adair v. Charter County of Wayne*, 452 F.3d 482 (6th Cir. 2006) (FLSA claims regarding non-payment of overtime were not of "public concern."); *Lunow v. City of Oklahoma*, No. 02-6066 (10th Cir. 28 March 2003) (unpublished and attached hereto) ("we question whether an FLSA lawsuit is a matter of public concern."); *Mayes v. Galveston County Juvenile Detention Center*, No. 01-40550 (5th Cir. 1 March 2002) (unpublished and attached hereto) (plaintiff's complaints of FLSA violations concerning employee pay were made "as an employee, not as a citizen," and the complaints were "of concern only to the employees of the detention center, not to the community in general."); *Chesser v. Sparks*, 248 F.3d 1117 (11th Cir. 2001) (statements to supervisor that County's failure to pay overtime wages did not satisfy public concern element); *Tiltti v. Weise*, 155 F.3d 596, 602 (2d Cir. 1998) (plaintiff's lawsuit on behalf of employees regarding pay under FLSA was a matter of "personal interest" not "public concern.").

For example, the plaintiff in *Shuck v. Clark*, No. 8:05-CV-2042-T-30TBM (M.D. Fla. 1 March 2007) (unpublished and attached hereto), made the identical argument that her complaints regarding "FLSA violations, misuse of pension funds, and violations of Civil Service Rules" constituted protected speech. In flatly rejecting the argument, the District Court explained:

> While Plaintiff's speech contained a public concern aspect, in looking at her speech as a whole, the main thrust of Plaintiff's speech was not to bring to light issues of public concern, but rather to address personal issues regarding her compensatory time . . . . At no time did she make any effort to relate her concerns to the public, only to administrative bodies during an investigation. As Plaintiff's speech was primarily motivated by her desire to improve the conditions of her employment, it cannot be said that her speech is entitled to First Amendment protection.

*Id.* at *3.

Similarly, in *Whitehurst v. Abel*, No. Civ.A.3:93CV185DO (N.D. Miss. 13 Jan. 1995) (unpublished and attached hereto), the court held plaintiff's participation in an FLSA lawsuit did not constitute a matter of public concern where the lawsuit "was directed at allegations that the City was not properly paying overtime in violation of the FLSA." Noting that a "public concern" is only implicated where "the individual speaks primarily in his role as a citizen rather than as an employee, or if the information conveyed is of 'relevance to the public's evaluation of the performance of governmental agencies,'" the court concluded plaintiff's FLSA involvement regarding employee benefits "relates to matters of individual desires and interests." *Id.*

As addressed above, Plaintiff's Complaint here does not contain allegations establishing that Plaintiff was acting "in his role as a citizen" in matters of interest to the general public, but as an employee of the Department responding to a specific request for feedback and relaying "matters of individual desires and interests," the "main thrust" of which concerned the vacation, pay, and management afforded by the Department. The thrust of Plaintiff's complaints, while of concern to himself and other Department employees, are not of concern to the public at large. The allegations establish Plaintiff "was primarily motivated by [his] desire to improve the conditions of [his] employment," and the foregoing case law leaves no dispute that such complaints do not satisfy the "public concern" element of his free speech claims. *Shuck, supra; Whitehurst, supra.*

### 2. Plaintiff's interest in First Amendment expression does not outweigh the City's interest in efficient operation of the workplace.

Even if Plaintiff's speech could be interpreted to involve a matter of public concern (which it is not), Plaintiff does not have a valid first amendment claim if the "the degree of public interest in the employee's statement was ...outweighed by the employer's responsibility to manage its internal affairs and provide 'effective and efficient' service to the public." *Daniels v. Quinn*, 801 F.2d 687, 690 (4th Cir. 1986). This question is ultimately one of law. *Id.* In regards to this element of the Plaintiff's first Amendment Claim, it is worth noting that "the government, as an employer, clearly possesses <u>greater authority</u> to restrict the speech of its employees than it has as sovereign to restrict the speech of its citizenry." *Kirby v. City of Elizabeth City*, 388 F.3d 440, 445-46 (4th Cir. 2004) (emphasis added).

Here, any interest the public may have had in the Plaintiff's statements regarding the Fire Department's internal policies is *outweighed* by the Department's "responsibility to manage its internal affairs and provide effective and efficient service to the public." *Daniels* at 690. This conclusion is supported by the fact that the Fourth Circuit has previously recognized a volunteer fire company has a "strong interest in the promotion of camaraderie and efficiency." *Goldstein v. The Chestnut Right Volunteer Fire. Co.*, 218 F.3d 337, 355 (4th Cir. 2000). In *Goldstein*, plaintiff, a former member of defendant, a volunteer fire company, contended his suspension and termination abridged his First Amendment rights. *Id.* at 351. Plaintiff's speech was related to operation of the fire department and included three categories of communication: (1) safety; (2) favoritism; and (3) miscellaneous expressions of other concerns. *Id.* at 353. In regards to "safety" issues, plaintiff had voiced concerns over violations of "safety regulations," including inadequate training of officers, insufficient investigation of safety violations, insufficient supplies, and failure to enforce training requirements. *Id.* The *Goldstein* court held plaintiff's concern for public safety in his speech *outweighed* any interest defendant had in overseeing its operations. *Id.* at 354. However, the Court's decision was premised upon the *community's need* to be aware of issues related to the potential compromise of "*safety*" by defendant. *Id.* at 355 (emphasis added).

The contrast between the importance of plaintiff's speech in *Goldstein* and the current Plaintiff's speech are obvious. Here, Plaintiff is attempting to contend the public has an interest in his speech regarding how Department members are paid and how many vacation days they are entitled to, among other things. In *Goldstein,* plaintiff was contending the public had an interest in his speech because it was related to safety violations which compromised the safety of the public. The contrast between the two factual scenarios could not be more clear. Surely, plaintiff's speech in *Goldstein*, related to issues of public safety is of much more interest and importance to the public then the current Plaintiff's speech regarding vacation days, lunch hours and other Departmental policies. This fact unequivocally supports the conclusion that the City's interests in the efficient operation of its workplace *greatly outweigh* the current Plaintiff's interest in voicing his opinions on internal departmental personnel policies.

3. **Plaintiff's allegations are insufficient to establish a causal connection between the protected speech and that the allegedly retaliatory conduct.**

The last element which Plaintiff must establish to state a claim for First Amendment retaliation is "a causal connection between the protected speech and the retaliation; specifically, the protected speech must be a 'substantial factor' in the decision to take the retaliatory action." *Sheaffer v. County of Chatham*, 337 F.Supp.2d 709, 718 (M.D.N.C. 2004). Here, the facts of the Complaint do not establish Plaintiff's complaints were the "but for" cause of the decision to take action against him. *Sheaffer*, 337 F.Supp.2d at 718. Plaintiff's conclusory allegation as to causation is not binding on this Court; rather, the underlying *factual allegations* must support Plaintiff's legal conclusion as to this element.

Here, the underlying facts of the Complaint plainly establish that although plaintiff voiced concerns regarding the Department in January 2009, no retaliatory action was taken in proximity to such complaints. The Complaint alleges that over four months later, in May 2009, Plaintiff committed a misdemeanor on Department premises by bringing and storing a .38 (thirty-eight) caliber handgun on the premises in direct violation of City law. Only *then* was any action taken against Plaintiff, and the reasons stated for the decision to terminate him were solely related to his bringing and storing a handgun at Station Number Two. The Complaint establishes both that no retaliatory action was taken against

Plaintiff in proximity to his complaints about the Department, and that action was taken over four months later and after Plaintiff admittedly committed a misdemeanor on Fire Department property in violation of City law and the City's Personnel Policy, conduct which clearly supports disciplinary action. "This temporal proximity … is simply too slender a reed on which to rest a Section 1983 retaliatory discharge claim." *Wagner v. Wheeler*, 13 F.3d 86, 91 (4th Cir. 1993). Further Plaintiff's termination was subsequently rescinded and converted to a demotion.

In *Evans*, *supra*, the North Carolina Court of Appeals held that "[m]ost significantly, however, assuming *arguendo* the substance of plaintiff's comments touched upon public concern, we are unable to conclude as a matter of law that plaintiff's statements were the motivating, or substantial, factor behind her termination." *Evans*, 132 N.C. App. at 10-11, 510 S.E.2d at 176-77. In so holding, the court noted undisputed evidence of two instances in which plaintiff "failed to follow established protocol," and that "[b]y contrast, while plaintiff's complaint alleged she was discharged in retaliation for protected speech, there was no forecast of evidence showing her statements were either the motivating or a substantial factor underlying her dismissal." *Id*. at 11, 510 S.E.2d at 177.

Likewise, notwithstanding Plaintiff's conclusory legal allegation as to causation, the Complaint fails to allege any facts to support a conclusion that Plaintiff's complaints of January 2009 were the "but for" cause of the adverse employment action in the immediate wake of Plaintiff's illegal activity on Department premises. Indeed, Plaintiff's own admissions as to the circumstances surrounding the employment decision established just the opposite. Accordingly, even if Plaintiff's speech involved matters of public concern, his Complaint fails to allege facts sufficient to support a conclusion that such speech was the "but for" cause of the adverse employment decision, and accordingly fails to satisfy an essential element of this claim.

D.    **Plaintiff's cannot maintain a claim for violation of his due process rights because Plaintiff has no property interest in continued employment.**

To establish a violation of procedural due process, Plaintiff must show (1) he had property or a property interest (2) of which the City deprived him (3) without due process of law. Here, Plaintiff's Complaint is insufficient to establish these elements.

First, Plaintiff cannot show he had a property interest in his employment with the city which would entitle him to due process protection. *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709 (1972). "Under North Carolina law, Plaintiff's employment is presumed to be at-will." *Buchanan v. Hight*, 133 N.C. App. 299, 302, 515 S.E.2d 225, 228 ("In the absence of a contractual agreement establishing a definite term of employment, the relationship between employer and employee is presumed to be terminable at will.). "Plaintiff's at-will employment does not, in and of itself, create a cognizable property interest in continued employment." *Woods v. City of Wilmington*, 125 N.C. App. 226, 230, 480 S.E.2d 429, 432 (1997).

An employee has a protected property interest in employment <u>only</u> if the employee can show a legitimate claim to employment under a <u>contract</u>, <u>state statute</u> or <u>local ordinance</u>. *Peace v. Employment Sec. Comm'n*, 349 N.C. 315, 321, 507 S.E.2d 272, 277 (1998); *see also Dail v. Town of Nags Head*, 878 F.2d 1430, *1 (4th Cir. 1989) (stating "[t]he requisite entitlement [to continued employment] can be based on an explicit contract or on state statutes that extend some formal guarantee of continued employment. Absent such a specifically grounded expectation of continued employment, an employment agreement in North Carolina establishes only an 'at-will' relationship.").

Here, Plaintiff's due process claims fail because Plaintiff has not alleged (and cannot allege) a property interest in continued employment under a contract, state statute or local ordinance. (*See generally* Complt.); *Peace*, 349 N.C. at 321, 507 S.E.2d at 277. Plaintiff *attempts* to avoid dismissal of his due process claims by alleging he was (1) "denied the right to a fair and impartial decision-maker" and (2) "denied the right to a fair hearing." (DE # 1-1, Complt. ¶ 84(a)(c); 89(a)(c)) However, such attempts are futile because Plaintiff, an at-will employee, does not aver that his purported "rights" to a fair and impartial decision-maker and/or a fair hearing arise under a <u>contract</u>, <u>state statute</u> or <u>local ordinance</u>. (*See generally* Complt.) Accordingly, Plaintiff's due process claim fails because he "lack[s] 'the requisite

property interest in continued employment to trigger the protections afforded by our State Constitution'." *Buchanan,* 133 N.C. App. at 305, 515 S.E.2d at 230, (*citing Lorbacher*, 127 N.C. App. at 675, 493 S.E.2d at 81); *Pittman v. Wilson County*, 839 F.2d 225, 226 (4th Cir. 1988) (stating that plaintiff's termination did not violate her due process rights because "under long settled North Carolina law, she was merely an 'at-will' employee without any contractual or statutory guarantees of continued employment.").

Even if Plaintiff can show that he has a protected property interest in employment (which he does not), Plaintiff cannot demonstrate a violation of his due process rights. Specifically, Plaintiff claims he was (1) "denied the right to a fair and impartial decision-maker" and (2) "denied the right to a fair hearing." (DE # 1-1, Complt. ¶ 84(a)(c); 89(a)(c)). These contentions are wholly without merit.

As evidenced by Plaintiff's own Complaint, he was afforded numerous due process rights despite the fact he did not have the right to have any process at all. First, the Complaint is clear that *prior to* the original termination decision being made, he had a pre-disciplinary conference where he was afforded the opportunity to respond to the allegations against him. (DE # 1-1, Complt. ¶¶ 61-62)

Further, Plaintiff was afforded the right to have a grievance hearing before a fair and impartial decision-maker. Around the time of his appeal, Lee separated her employment with the City, and an Interim City Manager was appointed. (DE # 1-1, Complt. ¶ 72) Thus, Plaintiff's grievance appeal was heard by an individual who was not involved in the original employment decision. Notably, Plaintiff's Complaint is devoid of *any factual allegations* to support his *conclusory* statement that he was denied a right to a fair and impartial decision-maker at the hearing. As such, Plaintiff has failed to provide facts necessary to "nudge[ his] claims across the line from conceivable to plausible." *Twombly*, 127 S.Ct. at 1974.

Plaintiff's contention that the grievance hearing was "unfair" is equally meritless. For example, Plaintiff was allowed to be represented by counsel at the hearing. (DE # 1-1, Complt. ¶ 69) The fact that the Interim City Manager *modified* the original employment action further belies the claim that the grievance hearing was procedurally defective. In short, Plaintiff's factual allegations are insufficient to show *any* defective process.

## E.    Plaintiff's cannot maintain a § 1983 equal protection claim.

To state an equal protection claim, Plaintiff must plead facts to "demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." *Williams v. Hansen,* 326 F.3d 569, 576 (4th Cir. 2003) (quoting *Morrison v. Garraghty,* 239 F.3d 648, 654 (4th Cir. 2001)).[1]  Plaintiff has not pled *facts* to support either of these elements.

Plaintiff's equal protection claim fails because he has not alleged that he is a member of any identified class such as a specific racial or gender class.  (*See generally* Complt.)  Instead, Plaintiff simply contends he was treated differently from (1) "similarly situated employees who have been restored to their positions and paid lost wages" and (2) "similarly situated employees with regard to the discipline imposed against him."  (DE # 1-1, Complt. ¶¶ 84(d)(e); 89(d)(e))  As such, Plaintiff's equal protection claim is  classified as a "class-of-one" claim—a claim which does not apply in the context of public employment.

In *Engquist v. Oregon Dept. of Agr.*, 128 S.Ct. 2146 (2008), plaintiff attempted to bring a "class-of-one equal protection claim" against her employer claiming that she was fired *not* because she was a member of an identified class.  Rather, plaintiff claimed she was fired for "arbitrary, vindictive, and malicious reasons."  *Id.* at 2149.  Plaintiff claimed the Equal Protection Clause forbids public employers from irrationally treating one employee differently from others similarly situated, regardless of whether the different treatment is based on the employer's membership in a particular class.  *Id.* at 2150.  The U.S. Supreme Court rejected plaintiff's contentions, holding "the class-of-one theory of equal protection does not apply in the public employment context."  *Id*. at 2151 (emphasis added).  The *Engquist* court stated:

> In concluding that the class-of-one theory of equal protection has no application in the public employment context… we are guided, as in the past, by the "common-sense realization that government offices could not function if every employment decision became a constitutional matter."  If, as Engquist suggests, plaintiffs need not claim

---

[1] The Fourth Circuit has previously held that claims based on the allegation that Plaintiff "was treated differently in retaliation for his speech are, at their core, free-speech retaliation claims that do <u>not</u> 'implicate the Equal Protection Clause.'"  *Kirby*, 388 F.3d at 447 (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 250 (4th Cir. 1999)).

discrimination on the basis of a members in some class or group, but rather may argue only that they were treated by their employers worse than other employees similarly situated, any personnel action in which a wronged employee can conjure up a claim of differential treatment will suddenly become the basis for federal constitutional claim. Indeed, an allegation of arbitrary differential treatment could be made in nearly every instance of an assertedly wrongful employment action- not only hiring and firing decisions, but any personnel action, such as promotion, salary, or work assignments- on the theory that other employees were not treated wrongfully.

*Id.* at 2156 (internal citations omitted). Here, Plaintiff's equal protection claims are synonymous with the claims which were brought in *Engquist* and which were rejected by the Supreme Court.

Moreover, even if Plaintiff had properly alleged he was member of a class entitled to equal protection, Plaintiff has not alleged he was the victim of *purposeful discrimination*. Purposeful discrimination must present a "'stark' pattern of adverse impact on a particular group." *Karagiannopoulos v. City of Lowell*, 2008 WL 2447362, 7 (W.D.N.C. 2008) (unpublished and attached hereto) (citing *E & T Realty v. Strickland,* 830 F.2d 1107, 1114 n. 9 (11th Cir. 1987)). *Arbitrary conduct*, without purposeful discrimination, does *not* violate the equal protection clause." *Id.*

Given the foregoing, Plaintiff's equal protection claim must be dismissed.

### F.     Lee and Corbet are entitled to qualified immunity from Plaintiff's § 1983 claims.

The doctrine of qualified immunity shields public officials "from civil liability insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Johnson v. Caudill*, 475 F.3d 645, 650 (4th Cir. 2007). The initial "threshold question" is whether "the facts alleged show that [the public official's] conduct violated a constitutional right? If no, then no further inquiry is required." *Bennett v. Monette*, 507 F.Supp.2d 514, 520 (E.D.N.C. 2007). "If, on the other hand, a constitutional right is deemed to have been violated, 'the next, sequential step is to ask whether the right was clearly established,' meaning that 'in the light of pre-existing law[,] the unlawfulness of [the] actions is apparent.' " *Id.* In the context of this analysis, a right is "clearly established" only if "the contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Wilson*, 526 U.S. at 614-15. "[T]he contours of the right must have been *so conclusively drawn as to leave no doubt* that the challenged action was

unconstitutional." *Edwards*, 178 F.3d 231, 251 (4th Cir. 1999) (emphasis added) (internal quotation marks omitted).

As addressed herein, the allegations of Plaintiff's Complaint fail to show that Defendants Lee and Corbet violated any constitutional right of Plaintiff. Accordingly, "no further inquiry is required," and both defendants are entitled to immunity. *Id*. However, even if Plaintiff had properly stated a violation of his constitutional rights, his allegations fail to satisfy the second prong of the analysis by establishing that the constitutional right was so clearly established by pre-existing law that the unlawfulness of defendants' action was apparent at that time.

### 1.     <u>Free Speech Claim.</u>

In the context of protected speech, the Fourth Circuit has noted that "[o]nly infrequently will it be 'clearly established' that a public employee's speech on a matter of public concern is constitutionally protected, because the relevant inquiry requires a 'particularized balancing' that is subtle, yet difficult to apply, and not yet well defined." *Pike v. Osborne*, 301 F.3d 182, 185 (4th Cir. 2002).

Moreover, the standard for judging such action "is not as lawyers or judges with the benefit of hindsight, but instead whether 'an objectively reasonable official in [a] similar circumstance [ ]' would have known that his actions violated plaintiff's clearly established constitutional rights." *Bennett*, 507 F.Supp.2d at 521. Therefore, a right cannot be considered "clearly established" for purposes of qualified immunity if courts disagree about the contours of the right. *"If judges thus disagree on a constitutional question, it is unfair to subject [government officials] to money damages for picking the losing side of the controversy." Wilson,* 526 U.S. at 618, 119 S.Ct. at 1701; *accord McVey v. Stacey*, 157 F.3d 271, 277 (4th Cir. 1998) ("we do not impose on the official a duty to sort out conflicting decisions or to resolve subtle or open issues.").

In the present case, it cannot be said that it was so well established that Plaintiff's concerns regarding the Department were constitutionally protected as to render defendants' actions plainly unlawful as established by pre-existing law. Indeed as cited above, numerous courts have held that an employee's complaints regarding FLSA violations and concerns regarding the conditions of employment

such as pay, vacation time, and other benefits, do _not_ constitute constitutionally protected speech.  Even if Plaintiff could cite authority to the contrary, the case law cited herein establishes at a minimum that any constitutional protection to be afforded such complaints is not "clearly established" by "pre-existing law"; *at best*, there is divergence in the case law regarding the level of protection to be afforded the very types of complaints which are the subject of Plaintiff's claims here.  Again, the educated judgment of lawyers and judges in hindsight cannot provide the proper standard; the issue turns on whether " 'an objectively reasonable official in [a] similar circumstance [ ]' would have known that his actions violated plaintiff's clearly established constitutional rights."  *Bennett*, 507 F.Supp.2d at 521.  In view of established case law that an employee's concerns regarding FLSA violations and other conditions of employment such as pay, vacation time, and management are not generally afforded constitutional protection, Plaintiff cannot establish that Lee and Corbet violated a wholly apparent, clearly establish right of Plaintiff.  Accordingly, these defendants are entitled to public official immunity.

2. **Due Process Claim.**

Similarly, Lee and Corbet are entitled to qualified immunity because it has not been clearly established that an at-will employee is entitled to any procedural due process protections at all.  To the contrary as explained *supra*, at-will employees—even at-will public employees—are *not* entitled to any process at all.  As such, Lee and Corbet are entitled to qualified immunity on this claim.

3. **Equal Protection Claim.**

Finally, Lee and Corbet are entitled to qualified immunity as to Plaintiff's equal protection claim. The law has not clearly established that a public employee is guaranteed equal protection in the absence of purposeful discrimination or membership in a protected group.  *See, e.g.*, *Williams*, 326 F.3d at 576 Furthermore, the Supreme Court *has clearly established* that class of one equal protection claims are not valid in the public employment context.  As such, Plaintiff cannot defeat Lee and Corbet's claim to qualified immunity as to his equal protection claim.

III. **Plaintiff's state constitutional claims all fail as a matter of law.**

Plaintiff's failure to properly allege violations of his federal constitutional rights to free speech, due process and equal protection result in the inevitable conclusion that his state constitutional claims fail as a matter of law. North Carolina Courts have established that these rights under the State Constitution afford the same protection as those of the Federal Constitution and employ the same analysis to determine whether a plaintiff has stated a viable claim. *See, e.g.*, *Evans v. Cowan*, 132 N.C. App. 1, 9, 510 S.E.2d 170, 175-76 (1999) ("For such a [free speech] claim to be properly advanced, the speech at issue first must involve a matter of public concern. Second, 'such protected speech or activity [must have been] the "motivating" or "but for" cause for [the plaintiff's] discharge or demotion.'"); *McNeil v. Harnett County*, 327 N.C. 552, 563, 398 S.E.2d 475, 481 (1990) (holding that the "Law of the Land" clause has the same meaning and effect as the due process clause of the federal constitution); *see also, Woods v. City of Wilmington*, 125 N.C. App. 226, 230, 480 S.E.2d 429, 432 (1997) (stating that "The Law of the Land Clause" is synonymous with the Fourteenth Amendment of the federal Constitution); *Bacon v. Lee*, 353 N.C. 696, 719 n. 11, 720-21, 549 S.E.2d 840, 856 n. 11, 856-57 (2001) (stating that due process and equal protection challenges under the North Carolina Constitution are resolved by applying "the same test used by federal courts under the parallel clause in the United States Constitution"); *Department of Transp. v. Rowe*, 353 N.C. 671, 675, 549 S.E.2d 203, 207 (2001) (noting that North Carolina courts employ the same test when considering alleged deprivations of equal protection under either the state or United States Constitution); *In re Moore's Sterilization*, 289 N.C. 95, 98-105, 221 S.E.2d 307, 309-14 (1976) (treating alleged deprivations of due process and equal protection under state and federal Constitutions with the same framework applied by federal courts). Thus because Plaintiff cannot prove a violation of his Federal constitutional rights, his State constitutional claims and these claims must be dismissed with prejudice.

**IV.     Plaintiff cannot maintain claims premised upon violation of the North Carolina Constitution against Lee and Corbet.**

Plaintiff has attempted to assert due process violations, equal protection violations and free speech violations under the North Carolina Constitution against Lee and Corbet in their individual capacities. These claims all fail as a matter of law.

In *Hines v. Yates*, 171 N.C. App. 150, 614 S.E.2d 385 (2005), plaintiff worked as an investigatorial assistant in the district attorney's office for 19-B Prosecutorial District, but was terminated by the district attorney. *Hines*, 171 N.C. App. at 153, 614 S.E.2d at 387. Plaintiff filed several claims arising out of his termination, including claims for violation of his State constitutional rights against the district attorney in his individual capacity. *Id.* at 154, 614 S.E.2d at 388. The North Carolina Court of Appeals rejected this claims against the district attorney in his individual capacity finding that:

> It is well settled in North Carolina that *no direct cause of action* for monetary damages exists against officials sued in their individual capacities who have allegedly violated a plaintiff's constitutional rights.

*Id.* (emphasis added); *see also Corum v. University of North Carolina*, 330 N.C. 761, 788, 413 S.E.2d 276, 293 (1992).

Similarly here, Plaintiff's State constitutional claims against Lee and Corbet in their individual capacities must be dismissed because no direct cause of action for monetary damages exists against officials sued in their individual capacities for violating Plaintiff's State constitutional rights. *Id.*; *see also Corum*, 330 N.C. at 788-89, 413 S.E.2d at 293 ("it is the state officials, acting in their official capacities, that are obligated to conduct themselves in accordance with the Constitution… We hold that plaintiff has no direct cause of action against [defendant] Thomas or [defendant] Durham sued in their *individual capacities* for alleged violations of plaintiff's constitutional freedom of speech rights.") (emphasis in original).

**V.      Plaintiff's claim for wrongful discharge must be dismissed because Plaintiff's discharge was rescinded by the City of Roanoke Rapids.**

As a preliminary matter, to the extent Plaintiff purports to state a claim of wrongful demotion, this claim must be dismissed. North Carolina has not recognized an the tort of wrongful demotion, and Plaintiff can cite no authority in support of such a claim. Moreover, even if such a tort were recognized,

Plaintiff could not state such a claim against Lee and Corbet because the Complaint affirmatively alleges it was *Connet*–not Lee or Corbet–who made the decision to demote Plaintiff.  (DE # 1-1, Complt. ¶ 66)

To the extent Plaintiff intends to state a wrongful discharge claim based on his alleged termination, that claim also necessarily fails as a matter of law.  Termination is an essential element of a claim for wrongful discharge.  *Imes v. City of Asheville*, 163 N.C. App. 668, 670, 594 S.E.2d 397, 398 (2004).  To survive a motion to dismiss under the *Coman* exception to the at-will employment doctrine the employee "must allege facts which indicate that [plaintiff] was in fact discharged."  *Gravitte v. Misubishi Semiconductor America*, 109 N.C. App. 466, 472, 428 S.E.2d 254, 258 (1993).

In *Graham v. Hardee's Food Systems, Inc*., 121 N.C. App. 382, 465 S.E.2d 558 (1996), the Court of Appeals upheld dismissal of plaintiff's wrongful discharge claim where plaintiff admitted the employer did not actually terminate her (the plaintiff admitted she left her employment)*.  Id.* at 386, 465 S.E.2d at 561.

Similarly here, Plaintiff's Complaint fails to state facts establishing Plaintiff's actual termination, an essential element of this claim.  To the contrary, the Complaint affirmatively pleads Plaintiff's continued employment, stating "Defendant Roanoke Rapids has employed Hudson as a member of the Fire Department since November 1989."  (DE # 1-1, Complt. ¶ 23) (emphasis added).  While Plaintiff alleges the decision was made to discharge him on May 6, 2009, the Complaint further alleges that Plaintiff engaged in the City's grievance procedure, appealed his termination, and that on July 6, 2009 Interim City Manager Pete Connet *rescinded* the decision to terminate Plaintiff and decided instead that Plaintiff would simply be "suspen[ded] without pay."  (DE # 1-1, Complt. ¶¶ 63, 72)

At the Rule 12(b)(6) stage, a court is not required to accept legal conclusions, unwarranted references, unreasonable conclusions or arguments as true.  *Eastern Shore Markets Inc.*, 213 F.3d at 180.  Here, it is both illogical, unreasonable and impossible for Plaintiff to contend he has stated a wrongful discharge claim, requiring actual termination, while simultaneously admitting (1) that he has been employed "as a member of the Fire Department since November 1989" and (2) that the decision to terminate him was officially *rescinded* and *converted* to a mere suspension without pay. (DE # 1-1,

Complt. ¶¶ 23, 72) Due to Connet's decision to rescind Plaintiff's termination, Plaintiff's employment at the City has been ongoing, uninterrupted, and without discharge since November 1989. (DE # 1-1, Complt. ¶¶ 23, 72) Accordingly, Plaintiff's wrongful discharge claim fails for lack of the essential element of an actual termination. *See Graham*, 121 N.C. App. 382, 465 S.E.2d 558 (1996); *see also Mosley v. Bojangles' Restaurants, Inc.,* No. 1:03CV00050, *11 (M.D.N.C. Mar. 30, 2004) (unpublished and attached hereto) ("North Carolina courts have declined to recognize a public-policy exception to the employment-at-will doctrine for constructive, as opposed to actual, discharges.").

Further, Defendants contend that because Plaintiff's termination was rescinded, his wrongful discharge claim amounts to no more than an improper attempt to have this Court rule on an internal personnel decision of the City which is moot in view of Plaintiff's admission that he continues to enjoy uninterrupted employment with the City. (DE # 1-1, Complt. ¶¶ 23, 72) The United States Supreme Court has unequivocally held that the government, as an employer, enjoys considerable discretion in making personnel decisions. *Connick*, 461 U.S. at 147, 103 S.Ct. at 1690 ("[A] federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior."); *Bishop v. Wood*, 426 U.S. 341, 349-50, 96 S.Ct. 2074, 2080 (1976). Moreover, federal courts have a history of declining to judicially scrutinize internal personnel decisions of government agencies. In *Bishop*, that court spoke at length regarding the issue of whether personnel decisions of public agencies should be subject to judicial scrutiny:

> The federal court is not the appropriate forum in which to review the multitude of personnel decisions that are made daily by public agencies. We must accept the harsh fact that numerous individual mistakes are inevitable in the day-to-day administration of our affairs. The United States Constitution cannot feasibly be construed to require federal judicial review for every such error.

*Id.*

Additionally, courts will not act as "super-personnel agencies." *Singleton v. Cecil*, 176 F.3d 419, 428 (8th Cir. 1999) (noting Court's reluctance to assume the role of a "super-personnel department [ ] second-guessing the wisdom of … personnel decisions.") (internal citations omitted); *Hidalgo v. Overseas Condado Ins. Agencies, Inc.*, 120 F.3d 328, 337 (1st Cir. 1997) (noting courts' reluctance to "

'sit as super personnel departments' " (quoting *Mesnick v. General Elec. Co.*, 950 F.2d 816, 825 (1st Cir. 1991)); *Dale v. Chicago Tribune Company*, 797 F.2d 458, 464 (7th Cir. 1986) ("This Court does not sit as a super-personnel department that reexamines an entity's business decisions."). As the Complaint on its face affirmatively establishes Plaintiff's continuous, uninterrupted employment with the City, Plaintiff fails to plead an essential element of wrongful discharge and fails as a matter of law.

**VI.      Plaintiff cannot maintain a claim for wrongful discharge against the individual defendants.**

Plaintiff's wrongful discharge claims against Lee and Corbet also fail as a matter of law because they were not Plaintiff's "employer" for the purposes of such a claim. In *Lorbacher v. Housing Auth. of the City of Raleigh*, 127 N.C. App. 663, 493 S.E.2d 74 (1997), the North Carolina Court of Appeals affirmed 12(b)(6) dismissal of a wrongful discharge claim brought against the individual defendants "as they were not plaintiff's employers for the purposes of a wrongful discharge claim." *Id.* at 671, 493 S.E.2d at 79, *overruled in part on other grounds by Riley v. Debear*, 144 N.C. App. 357, 574 S.E.2d 831 (2001). Similarly, in *Iglesias v. Wolford*, 539 F.Supp.2d 831, 841 (2008), the plaintiff, an administrative assistant, attempted to allege wrongful discharge claims against the Chief of Police, the City Manager, and the Human Resources for Defendant City of Oxford in their individual capacities. This Court ruled that the individual defendants could not be held liable for wrongful discharge when, by the Plaintiff's own admission, the individual defendants were not the plaintiff's employer:

> Plaintiff is properly concerned with trying to establish her wrongful discharge claim against the individual defendants in their personal capacities… However, the capacity in which she has sued the individual defendants is irrelevant to whether any of them qualifies as her "employer." Under North Carolina law, the individual defendants <u>cannot</u> be liable for wrongfully discharging Iglesias, because by Iglesias' own admission, the individual defendants were not her employer.

*Id.* at 840 (emphasis added).

Here, Plaintiff has admitted that the City, <u>*not*</u> the individual defendants, *is and was* his employer at all relevant times. (<u>DE # 1-1</u>, Complt. ¶ 23) Specifically, the Complaint states: "<u>Defendant Roanoke Rapids has employed Hudson as a member of the Fire Department since November 1989.</u>" (*Id.*) (emphasis added). Accordingly, pursuant to *Lorbacher* and *Iglesias*, Plaintiff's claims for wrongful

discharge against Lee and Corbet necessarily fail as a matter of law because they *are not and were not* Plaintiff's "employer."

In the event the Court finds that Plaintiff has stated a viable claim for wrongful discharge, Defendants Lee and Corbet are nevertheless entitled to public official immunity from any such claim. North Carolina law is well established that officials such as Lee, City Manager; and Corbet, Fire Chief, are "public officials" for purposes of immunity. *See, e.g.*, *Beck v. City of Durham*, 154 N.C. App. 221, 230, 573 S.E.2d 183, 190 (2002) (city managers are "considered public officials."); *Willis v. Town of Beaufort*, 143 N.C. App. 106, 111, 544 S.E.2d 600, 604 (2001) ("we conclude that a fire chief is a public official."). "The public immunity doctrine protects public officials from individual liability for negligence in the performance of their governmental or discretionary duties." *Dempsey v. Halford*, 183 N.C. App. 637, 640, 645 S.E.2d 201, 204 (2007). A plaintiff may only avoid application of this immunity by establishing that the official acted with malice or outside the scope of official duties. *Id.*

Here, Plaintiff's Complaint contains no <u>*factual allegations*</u> to support a conclusion that either Lee or Corbet acted maliciously or beyond the scope of their official duties as City Manager and Fire Chief. Rather, the Complaint clearly establishes that they were acting within the scope of their official duties, and contains no allegation of malice. Because Lee and Corbet are public officials under North Carolina law, they are entitled to the protections of public official immunity from Plaintiff's tort claim.

**VII.  Plaintiff's claims against Lee and Corbet in their official capacities are duplicative of Plaintiff's claims against the City and should be dismissed.**

In addition to bringing all of his claims against the City, Plaintiff has also brought all claims against Lee and Corbet in their official capacities. (*See generally* Complt.) It is well-settled that an official capacity claim against a governmental official is nothing more than a claim against the governmental entity employing the official. *Love-Lane v. Martin, et al.*, 355 F.3d 766, 782 (4th Cir. 2004) (affirming dismissal of Section 1983 claim against defendant in his official capacity as superintendent because it was "duplicative" of claim against school board); *see also Oakwood Acceptance v. Massengill*, 162 N.C. App. 199, 211, 590 S.E.2d 412, 421-22 (2004) (holding claims against defendant

in his official capacity as Johnston County's Tax Collector were "identical" to the claims against Johnston County); *May v. City of Durham*, 136 N.C. App. 578, 584, 525 S.E.2d 223, 229 (2000) ("[I]n a suit where plaintiff asserts a claim against a government entity, a suit against those individuals working in their official capacity for this government is redundant."); *Hicks ex rel. Hicks v. Halifax County Bd. of Educ.*, 93 F. Supp. 2d 649, 667 (E.D.N.C. 1999) (dismissing official capacity Section 1983 claims asserted against superintendent and principal because they were "identical" to claim asserted against board of education).

Accordingly, Plaintiff's claims against Lee and Corbet in their official capacities should be dismissed with prejudice. *Id.*

## CONCLUSION

Based on the foregoing, Defendants respectfully request that this Court enter an order dismissing all of Plaintiff's claims WITH PREJUDICE.

Respectfully submitted, this the 12th day of February, 2010.

CRANFILL, SUMNER & HARTZOG, L.L.P.

BY:     */s/ Ann H. Smith*
        ANN H. SMITH
        N.C. State Bar No. 23090
        PAUL S. HOLSCHER
        N.C. State Bar No. 33991
        *Attorneys for Defendants*
        Post Office Box 27808
        Raleigh, NC 27611-7808
        Telephone: (919) 828-5100
        Facsimile:  (919) 863-3407
        E-Mail: asmith@cshlaw.com
        E-Mail: pholscher@cshlaw.com

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA

CIVIL ACTION NO.:  4:10 CV 00002

DANNY W. L. HUDSON, JR.

                  Plaintiff,

                  v.

PHYLLIS P. LEE. individually and as City Manager
of the City of Roanoke Rapids; GARY
CORBET, individually and as Fire Chief of the
City of Roanoke Rapids; and the CITY OF
ROANOKE RAPIDS,

                  Defendants.

)
)
)
)
)
)
)
)
)
)
)
)

**CERTIFICATE OF SERVICE**

      I hereby certify that on February 12, 2010, I electronically filed the foregoing *Defendants' Memorandum in Law in Support of Motion to Dismiss* with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

              James N. Jorgensen, Esq.
              James N. Jorgensen, P.A.
              4030 Wake Forest Road, Suite 209
              Raleigh, NC 27609

      This the 12th day of February, 2010.

              CRANFILL, SUMNER & HARTZOG, L.L.P.

         BY:     */s/ Ann H. Smith*
                ANN H. SMITH
                N.C. State Bar No. 23090
                PAUL S. HOLSCHER
                N.C. State Bar No. 33991
                *Attorneys for Defendants*
                Post Office Box 27808
                Raleigh, NC 27611-7808
                Telephone: (919) 828-5100
                Facsimile:  (919) 863-3407
                E-Mail: asmith@cshlaw.com
                E-Mail: pholscher@cshlaw.com